THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DWIGHT C. HONAKER, Defendant-Appellee.

Fourth District No. 4—83—0617

Opinion filed September 28, 1984.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

David W. Butler, of Bloomington, for appellee.

JUSTICE MILLER delivered the opinion of the court:
Defendant was arrested for driving under the influence of alcohol.

The arresting officer filed an affidavit alleging reasonable grounds to believe that defendant was driving under the influence of alcohol and that defendant had refused to submit to a breathalyzer test. At the implied consent hearing, the trial court ruled in favor of the defendant. The court stated that the State had failed to show by a preponderance of the evidence that defendant's refusal to submit to the breathalyzer test was a cognitive, knowing refusal. The State appeals, and we reverse and remand.

We do not have a transcript of the proceedings at the implied consent hearing. Therefore, we must base our review on the uncontested bystander's report. The bystander's report states that the arresting officer read the implied consent law to the defendant and asked if defendant understood it. Defendant responded affirmatively. The defendant said that he was refusing to submit to the breathalyzer test because he knew he would fail it. Neither the State nor the defense asked the arresting officer specifically what was read to the defendant prior to his refusal. Defendant presented no evidence. The trial court ruled that the State had not proved by a preponderance of the evidence that the defendant's refusal to submit to the breathalyzer test was a cognitive, knowing refusal.

Section 11—501.1(c) of the Illinois Motor Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(c)) provides as follows:

> "A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in suspension of such person's license to operate a motor vehicle for six (6) months for the first such arrest and refusal and a suspension of such privilege for 12 months for the second and each subsequent such arrest and refusal within 5 years. ***
>
> *** Whether the person was informed that such person's privilege to drive would be suspended if such person refused to submit to the test or tests shall not be an issue."

Implied consent hearings are civil proceedings. (*People v. Lyden* (1981), 97 Ill. App. 3d 540, 423 N.E.2d 262; *People v. Fancher* (1978), 56 Ill. App. 3d 632, 371 N.E.2d 1291.) The scope of an implied consent hearing is limited by statute to the issues provided in section 11—501.1(d) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(d)). (*People v. Babych* (1983), 112 Ill. App. 3d 704, 445 N.E.2d 921.) Under section 11—501.1(c), the question of whether a person was warned that his driving privileges would be suspended if he refused to submit to the test is not an issue at the implied consent hearing.

Defendant contends that section 11—501.1(c) violates due process

because the statute does not require the State to prove that the defendant was warned of the consequences of refusing to take the breathalyzer test. Defendant cites *Garrison v. Dothard* (Ala. Civ. App. 1979), 366 So. 2d 1129, as the sole support for this constitutional argument. The Alabama statute under scrutiny in *Garrison*, like our statute, provided that a police officer warn the individual requested to take a chemical sobriety test that his failure to submit to the test would result in a suspension of his driver's license. The statute also stated that whether the individual had been warned would not be an issue at the hearing.

In *Garrison*, the initial decision to suspend the defendant's license was made by an administrative agency. The decision was affirmed by the trial court at a *de novo* hearing, and reversed by the appellate court. Contrary to the suggestion of the defendant in the case at bar, however, the appellate court in *Garrison* did not rest its reversal on due process grounds. Rather, the appellate court found, as a matter of statutory construction, that the statute regulated only the issues to be raised at the administrative proceeding. The court determined that the issue of warning could be addressed at the *de novo* hearing in the trial court. We see no reason or logic in construing the Illinois statute in a similar manner. Under the Illinois procedures, there is no preliminary administrative proceeding, hence the limiting language of the statute can only have application to the judicial proceedings in the trial court.

■ The due process clause clearly applies to the deprivation of a driver's license. (*Dixon v. Love* (1977), 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723; *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.) Suspension of a driver's license involves a protectable property interest. *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.

The Supreme Court stated in *Mackey* that the only question presented was "what process is due to protect against an erroneous deprivation of that interest." (443 U.S. 1, 10, 61 L. Ed. 2d 321, 329, 99 S. Ct. 2612, 2617.) The court held that the following standard should be used in resolving this issue:

" 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'

*Mathews v. Eldridge,* 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)." *Mackey v. Montrym* (1979), 443 U.S. 1, 10, 61 L. Ed. 2d 321, 329-30, 99 S. Ct. 2612, 2617.

The initial step in this balancing process is identification of the nature and weight of the private interest affected by the official action which has been challenged. In the case at bar, the private interest affected is the individual's license to drive a motor vehicle. There is no risk under our statute that a driver will be deprived of his license prior to a hearing, because paragraph 11—501.1(c) grants a driver the right to a hearing before his license is suspended. The specific interest in the case at bar is whether the driver has a constitutional right to address at the implied consent hearing whether he was warned of the consequences of a refusal to take the test.

*Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, is instructive. In *Schmerber,* the defendant was arrested at the hospital while receiving treatment for injuries sustained in a car accident. The arresting officer directed that a blood test be performed on the defendant, despite defendant's refusal to consent. The court held that where the officer makes a justified conclusion that the driver was under the influence of alcohol, a compulsory blood test for blood-alcohol content does not violate due process. We conclude that since the defendant could have been required to submit to a breathalyzer test without his consent, it is not constitutionally mandated that he must be advised of the possible consequences where he is allowed the choice of whether to refuse the test.

The second step of the *Eldridge* inquiry requires that the court consider the likelihood of an erroneous deprivation of the private interest involved as a consequence of the challenged procedures. (*Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.) In *Mackey,* the court stated "that 'something less than an evidentiary hearing is sufficient prior to adverse administrative action' " (443 U.S. 1, 13, 61 L. Ed. 2d 321, 331, 99 S. Ct. 2612, 2618, quoting *Dixon v. Love* (1977), 431 U.S. 105, 113, 52 L. Ed. 2d 172, 180, 97 S. Ct. 1723, 1728). Under section 11—501.1(c) the arresting officer must file a sworn statement that the driver refused the test and that the officer had reasonable cause to believe the person driving the motor vehicle was under the influence of alcohol or other drug. Defendant then has the right to address these issues at the implied consent hearing. In view of the fact that his license may not be suspended without a showing that the officer had reasonable grounds to believe he was driving a motor vehicle while under the influence of alcohol or other drug, the risk of an erroneous deprivation of his driver's license is

minimal.

The final leg of the *Eldridge* balancing test requires us to identify the governmental function involved and to weigh the State interests served by the challenged procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought. (*Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.) The State interest in getting the drunk drivers off the highways is exceptionally strong. (*Illinois v. Batchelder* (1983), 463 U.S. 1112, 77 L. Ed. 2d 1267, 103 S. Ct. 3513; *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612; *Perez v. Campbell* (1971), 402 U.S. 637, 29 L. Ed. 2d 233, 91 S. Ct. 1704.) In *Batchelder,* the Supreme Court upheld the procedure involved in our implied consent statute as constitutional. Although the court did not address the specific issue involved here, the government interest in prohibiting drunk drivers access to motor vehicles is the same substantial interest as in *Batchelder.*

■ We conclude that due process does not require that the State be required to prove in an implied consent hearing that the defendant was warned of the consequences of refusing the breathalyzer. Our legislature has by statute granted the driver the right to refuse to take the breathalyzer test. This is not constitutionally required. (See *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826.) Our legislature has also provided that a driver arrested for driving under the influence be read the implied consent law and has specifically stated that this warning is not an issue in an implied consent hearing. While we deem it highly advisable that the officer does warn the driver, it is not constitutionally mandated that this warning be established at the implied consent hearing.

For the reasons stated, the judgment of the circuit court of McLean County is reversed and remanded.

Reversed and remanded.

MILLS, P.J., and WEBBER, J., concur.